UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL C. LARRABEE, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Civil Action No. 10-11446-NMG |
| ) | |
| DEUTSCHE BANK NATIONAL ) | |
| TRUST CO., ) | |
| ) | |
| Appellee. ) | |

REPORT AND RECOMMENDATION ON
BANKRUPTCY APPEAL

June 10, 2011

SOROKIN, M.J.

The Appellant, Michael Larrabee, appeals from the Bankruptcy Court's dismissal of an adversary proceeding brought by him against Appellee Deutsche Bank (the purported assignee and owner and holder of Larrabee's note and mortgage) in the course of his Chapter 13 Bankruptcy proceeding. Docket # 1. For the following reasons, I RECOMMEND that the Court AFFIRM IN PART the Bankruptcy Court's dismissal of the Appellant's adversary Complaint, REVERSE IN PART and remand for further proceedings on Count I of Larrabee's Complaint in his adversary proceeding.

I.      PROCEDURAL AND FACTUAL BACKGROUND.

In 2002, Larrabee and his wife purchased real property in South Yarmouth,

1

Massachusetts. R. at 14, ¶ 7. In 2003, and again in 2004, they refinanced their loan with Ameriquest. Id. The 2004 loan was secured by a mortgage recorded with the Barnstable County Registry of Deeds. Id. at 14-15, ¶ 9. On either April 23 or 24, 2004,[1] Ameriquest's closing agent informed the Larrabees orally that they had three days to cancel the transaction if they desired to do so. Id. at 15, ¶ 11. The closing agent neither explained how to exercise the right to cancel nor dated or discussed the written forms he providing relating to cancellation.[2] Id. Within three days, Larrabee contacted Mark Baker (identified to Larrabee by the closing agent as the person at Ameriquest to contact for any issues they might have with the loan), and verbally rescinded the loan. Id. at 16, ¶12. Baker assured Larrabee that he would see to it that the transaction was cancelled. Id. Eleven days later, on May 6, 2004, Larrabee received a check for the proceeds of the Loan. Id. at 16, ¶ 13. He had not contacted Ameriquest in writing at any point between the closing and his receipt of the check. Id. at 16, ¶ 13; Id. at 22, ¶ 33.

On September 5, 2007, Larrabee delivered a written notice of recission to Ameriquest, in which he alleged that Ameriquest had failed to select the most recently available index value when it calculated the Truth in Lending Disclosure Statement in 2004. Id. at 21, ¶ 29, 167-69.

On December 3, 2007, an assignment of the Larrabees mortgage from Ameriquest to Deutsche Bank was recorded in the Barnstable County Registry of Deeds, along with a foreclosure notice pursuant to the Service members Civil Relief Act. Id. at 22, ¶¶ 36-37.

On November 19, 2008, Larrabee filed a voluntary petition for Chapter 13 bankruptcy.

---

[1] Larrabee disputes the closing date (April 23) which appears on each of the loan documents, including where the Larrabees themselves dated their signatures.

[2] Further details concerning the documents informing the Larrabees of their right to cancellation are recited infra as necessary.

Id. at 1. On July 13, 2009, Deutsche Bank (as the purported owner and holder of Larrabee's 2004 mortgage by assignment from Ameriquest Mortgage Company) filed a motion for relief from the automatic stay of the Chapter 13 petition, seeking to foreclose on the mortgage. Larrabee opposed Deutsche Bank's motion, in part on the grounds that Deutsche Bank was not the real party in interest, because the assignment of the loan to it was invalid. R. 68-69.

On the same day, Larrabee filed an adversary proceeding against Deutsche Bank. R. at 13-32. Larrabee advanced four claims in the adversary proceeding: (1) for a declaratory judgment that Deutsche Bank was not the holder of his mortgage and therefore lacked "standing" to foreclose; (2) for violation of the Massachusetts Consumer Credit Disclosure Act, M.G.L. c. 140D; (3) for violation of the Massachusetts Consumer Protection Act, M.G.L. c. 93A; and (4) for unconscionability. Id.

On August 7, 2009, a hearing was held on Deutsche Bank's motion for relief from the stay. R. at 84-92. At that hearing, Deutsche Bank's counsel referred to the adversary proceeding and addressed Larrabee's contention that it was not the true owner of the note. Id. at 85-85. Although Larrabee had opposed the Motion for Relief from the Stay in part on the grounds that the assignment to Deutsche Bank was invalid (See, Id. at 69) Larrabee's counsel nevertheless stated at the hearing that he did not wish to address that issue substantively, because he was not lead counsel in the adversary proceeding and was not prepared to evaluate those claims, which he said were "better left for a motion to dismiss or whatever to raise those issues at that time." Id. at 89. The Court allowed the Motion for Relief from the Stay. Id. at 91. Larrabee appealed that order on August 20, 2009. R. at 74. On March 25, 2010, the Bankruptcy Appellate Panel for the First Circuit dismissed Larrabee's appeal because of his failure to file an opening

3

brief and appendix. Id. at 76.

Deutsche Bank moved to dismiss the adversary proceeding pursuant to Fed. R. Civ. P. 12(b)(6). Id. at 33. Larrabee's opposition again raised Deutsche Bank's standing to be before the Court at all. Id. at 97-99. Deutsche Bank sought and received permission to file a reply, in which it argued, inter alia, that having himself initiated an adversary proceeding in which he named Deutsche Bank as a creditor, Larrabee misunderstood and misapplied standing doctrine, which did not impose a burden to establish standing upon Deutsche Bank before defending itself against Larrabee's suit. Id. at 232-33.

A hearing on Deutsche Bank's motion to dismiss was held on July 25, 2010. Id. at 249-75. At the hearing, the Bankruptcy Judge (Hillman, J.) questioned whether Larrabee could raise standing given "all of the activity on the motion for relief [the stay] from way back." Id. at 261-62. The Court indicated that it felt that Larrabee was raising the issue too late, since he could have, and should have, raised it in the context of the motion for relief from the stay. Id. at 262. After hearing the remainder of the Parties' arguments, the Court allowed Deutsche Bank's motion, stating in doing so that

> I find myself in the unusual position of agreeing with almost everything that the movant says in the motion to dismiss. I think it's a fair statement of the law. I just don't think the Plaintiff has it. I'm going to – I hate to do this, but it'll save a lot of time – incorporate by reference the arguments made in the motion to dismiss [audio transcript unclear] and the motion to dismiss as to Deutsche Bank is granted.

Id. at 275.

Larrabee filed a timely appeal of that decision. Id. at 283.

II.     DISCUSSION

Standard of Review

On appeal from a decision of a bankruptcy court, this Court sits as an intermediate appellate court and addresses such actions "in the same manner as appeals in civil proceedings generally are taken to the courts of appeal from the district courts." 28 U.S.C. § 158(c)(2). As a result, a federal district court applies a "clearly erroneous" standard as to findings of fact and a de novo standard with respect to conclusions of law. In re LaRoche, 969 F.2d 1299, 1301 (1st Cir.1992). The Supreme Court has explained the plain error or clearly erroneous standard:

> "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.". . . . If the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

Anderson v. City of Bessemer City, 470 U.S. 564, 573–74 (1985) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)).

Larrabee asserts five errors in the Bankruptcy Court's resolution of Deutsche Bank's Motion to Dismiss the Adversary Complaint. He asserts that the Bankruptcy Court: (1) improperly adopted the movant's analysis with respect to each of the remaining issues, and thereby deprived him of a proper review of his claims; (2) erroneously applied issue preclusion doctrine in failing to consider his arguments concerning Deutsche Bank's lack of standing; (3) applied the wrong standard of review to his claim for violation of the Massachusetts Consumer Credit Cost Disclosure Act, M.G.L. c. 140D (MCCCDA); (4) erroneously determined that the same facts supporting his MCCCDA claim failed to state a claim under M.G.L. c. 93A; and (5) erroneously determined that he failed to state claims for either substantive or procedural unconscionability.

1. Sufficiency of the Bankruptcy Court's Review

As a threshold issue, Larrabee asserts that the Bankruptcy Court failed to conduct a sufficient analysis of his claims, instead improperly adopting the movant's arguments "without discussion or analysis or opinion." Docket # 10 at 18. There is no requirement that a Court ruling upon a Rule 12 motion memorialize its decision in a written order. The administrative record does not support Larrabee's contention that the Court failed to discuss or analyze his arguments. The Bankruptcy Court presided over a thirty-five minute hearing at which in engaged in colloquies with counsel concerning each of the issues. R. at 250- 75. The Bankruptcy Court incorporated by reference the arguments made within the movant's papers as an efficient means of articulating the rationale underlying its decision. Id. at 275. That the Court agreed with the analysis advanced by Deutsche Bank rather than those advanced by Larrabee is not evidence of dereliction of its duty. This argument is not grounds to reverse the Bankruptcy Court's decision.

2. Issue Preclusion - Deutsche Bank's Standing

Larrabee asserts that the Bankruptcy Court erred when it declined to consider anew arguments he had made previously (in the context of resolution of Deutsche Bank's Motion for Relief from Stay) concerning Deutsche Bank's standing to enforce the note. Deutsche Bank argued (and the Bankruptcy Court agreed) that the claim in the adversary proceeding for declaratory relief was barred by preclusion doctrine, because the issue had been argued before the Bankruptcy Court in the course of resolution of the motion for relief from the automatic stay, the Bankruptcy Court had ruled, and Larrabee had both appealed and failed to perfect his appeal. See R. at 260-62.

Larrabee's first argument in this respect is that standing is jurisdictional (and thus can be

raised at any time, in any proceeding) and that Count I of his adversary complaint was therefore not subject to the application of preclusion doctrine at all. Larrabee's first argument is without merit, although I agree that preclusion was not applicable here.

Resolution of whether or not Deutsche Bank is truly the owner of the note is of legal significance for several related – but nevertheless distinct – reasons. First, resolution of that question determines whether or not Deutsche Bank has the right (i.e., standing) to take affirmative legal actions (such as foreclosing on Larrabee's mortgage, or filing a Motion for Relief from Stay) on the basis of its ownership of the note. Larrabee is correct that Deutsche Bank's standing is (in those contexts) a jurisdictional issue that remains live at all times in such proceedings. Second, Deutsche Bank's status with regard to ownership of the note is also an element of the claims and defenses advanced by the Parties in the adversary action initiated by Larrabee – that is, the question presents a factual or legal issue underpinning Larrabee's claim for declaratory relief. But the presence of that question in the adversary proceeding does not also simultaneously present a "standing" issue within that proceeding, because Deutsche Bank is there defending itself against Larrabee's claims, and it need not itself demonstrate standing because it is not the party seeking a judicial remedy.

An important consequence of this distinction for this appeal is that in the adversary proceeding, the question presented by Deutsche Bank's ownership of the note was evidentiary, not jurisdictional, and thus it remains subject to the application of preclusion doctrine, if appropriate. Larrabee's reliance on In re Hayes, 393 B.R. 259 (Bkrtcy.D.Mass.2008) for the proposition that standing is always jurisdictional is misplaced because the debtor in that case was appropriately challenging the purported assignee's standing in the context of a motion for relief

7

from the automatic stay – in other words, where the purported assignee was itself seeking a judicial remedy (relief from the stay) and was required to demonstrate standing. The decision here reviewed was in the context of the adversary proceeding, where Deutsche Bank (as a defendant) faced no burden of demonstrating standing. Preclusion doctrine, if properly applied, could therefore bar relitigation of the issue of Deutsche Bank's ownership of the note.

The doctrine is nevertheless inapplicable to this case because the limited nature of a hearing on a Motion for Relief from the Automatic Stay does not permit satisfaction of the prerequisites for the application of preclusion doctrine. "Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment.'" Taylor v. Sturgell, 128 S.Ct. 2161, 2171 (2008) (quoting New Hampshire v. Maine, 532 U.S. 742, 748-749 (2001)). "By preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate, these two doctrines protect against the expense and vexation attending multiple lawsuits, conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the possibility of inconsistent decisions." Taylor, 128 S.Ct. at 2171 (citation and internal quotation marks omitted). When there is an identity of the parties (as is the case here) in subsequent actions, a party must establish four essential elements for a successful application of issue preclusion to the later action: (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment. Whitehouse v. LaRoche, 277 F.3d 568, 573 (1st Cir.2002).

Larrabee's argument concerning the preclusive effect of the Bankruptcy Court's ruling on

the Motion for Relief from Stay is that the issue was not actually litigated, given the limited nature of the hearing on the Motion for Relief from the Stay. The First Circuit has indeed held that:

> "the limited grounds set forth in the statutory language, read in the context of the overall scheme of § 362 [i.e., the Automatic Stay provisions of the Bankruptcy Code], and combined with the preliminary, summary nature of the relief from stay proceedings, have led most courts to find that such hearings do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate."

Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 32 (1st Cir.1994).

Thus, the motion for relief from the stay necessarily determined only that Deutsche Bank's "claim [was] sufficiently plausible to allow its prosecution elsewhere." Grella, 42 F.3d at 34. In contrast, the motion to dismiss the adversary complaint raised the question of whether Larrabee, drawing all reasonable inferences in his favor, had stated a claim that Deutsche Bank was not the owner and holder of the note. That Deutsche Bank possessed a colorable claim does not necessarily exclude Larrabee from stating, at the motion to dismiss stage, a contrary claim. As the First Circuit held, determining that a creditor has a colorable claim or a likelihood of succeeding "is not a determination of the validity of those claims," and thus preclusion was not applicable.[3] Grella, 42 F.3d at 33 & 33. Deutsche Bank advanced no other grounds to dismiss Count I of the adversary complaint in its memorandum in support of the motion and the Bankruptcy Court articulated no grounds beyond those set forth in the memorandum upon which

---

[3] While the Bankruptcy Court may have decided in the course of resolving the motion for relief from the stay that in fact Deutsche Bank owned the note and that Larabee's contrary argument was without merit, those conclusions (if made) were not necessary to resolution of the motion for relief from the stay.

9

it relied. Accordingly, I RECOMMEND that the Court reverse the dismissal of Count I of the adversary complaint and remand for further proceedings.

Standard of Review Applicable to MCCCDA Claims

Larrabee also asserts that the Bankruptcy Court erred when it improperly failed to consider his claims that the MCCCDA may provide a lower standard of review for MCCCDA-only claims (i.e., a "least sophisticated consumer" standard versus an "average consumer" test) due to Massachusetts's "opting out" of the federal Truth in Lending Act ("TILA") at 15 U.S.C. 1601, et seq. See Docket # 10 at 28-29.

First, because as was noted supra, the Bankruptcy Court specifically incorporated and adopted Deutsche Bank's memorandum of law in support of its Motion to Dismiss (See R. at 275), it cannot fairly be said that the Bankruptcy Court did not consider Larrabee's arguments. The issue was fully briefed in the incorporated pleadings and was also argued at the hearing (with the Court indicating that the argument was unsupported under applicable First Circuit precedent). See Id. at 102-04; 233-34; 267-68) Rather than failing to consider Larrabee's argument, the Bankruptcy Court simply agreed with Deutsche Bank's analysis.

Moreover, the Bankruptcy Court did not err in doing so. Larrabee had asserted in opposition to Deutsche Bank's motion that by exempting itself from the TILA, Massachusetts created a different standard of review applicable to MCCCDA-only claims. R. at 100-106. Deutsche Bank argued (and the Bankruptcy Court agreed) that the MCCCDA and TILA are essentially coextensive (with the sole notable exception of the statutes of limitations requirements for recission claims) and that the MCCCDA is therefore to be construed by reference to federal law. Id. at 283 (citing In re Desrosiers, 212 B.R. 716, 722 (D.Mass.1997)

(quoting In re Botelho, 195 B.R. 558, 564 (D.Mass.1996)); See also McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 422 (1st Cir.2007) ("Except for a modest variance in regard to the limitation . . . the MCCCDA mirrors its federal counterpart. This is not an accident; the Massachusetts legislature closely modeled the state law after the TILA. It is, therefore, common ground that the MCCCDA should be construed in accordance with the TILA) (internal citation omitted).

The crux of Larrabee's argument in favor of the "least sophisticated consumer" standard is that "there is no Massachusetts case law that has determined – with finality – that the analysis of TILA versus MCCCDA claims is 'identical,'" and that because the MCCCDA offers greater protections to the consumer than does TILA in a number of respects, the "least sophisticated consumer" standard therefore "ought to apply" in order to be reconciled with the Fair Debt Collection Practices Act. Docket # 10 at 29.

He offers no authority for that proposition, however, and his argument is unpersuasive in the face of the federal cases applying the "average consumer" test to both TILA and MCCCDA claims, along with the Supreme Judicial Court's statement in Mayo v. Key Financial Services, Inc., 424 Mass. 862 (1997) that because the MCCCDA was "closely modeled" on TILA, federal court decisions are instructive in construing the MCCCDA. Mayo, 424 Mass. at 864; McKenna, 475 F.3d at 418; See also Palmer v. Champion Mortgage, 465 F.3d 24, 28 (1st Cir.2006).

4. Dismissal of MCCCDA Claims

Larrabee next challenges the Bankruptcy Court's determination that Deutsche Bank could not be liable to Larrabee on the MCCCDA claims alleged in the Adversary Complaint. Deutsche Bank argued (and the Bankruptcy Court agreed) that the violations alleged were purely technical

violations which do not extend the recission period, and that other violations alleged were not attributable to Deutsche Bank as an assignee where violations alleged were not of a type apparent on the face of the disclosure statement provided in connection with the transaction. See, R. at 41-47.

In Count III of the Adversary Complaint, Larrabee alleged that Ameriquest violated the MCCCDA in five respects: (1) by failing to enter the 'Final Date to Cancel' on all nine Notices of Right to Cancel provided to the Larrabees (2) by falsifying four of the Notices of Right to Cancel by stating the "Document Signing Date" was April 23, 2004, when the Larrabees executed the documents on April 24, 2004; (3) by using Notices of Right to Cancel which were improper as to form (i.e., by using Regulation Z, Appendix H, form H-8 instead of form H-9); (4) by falsifying the One-Week Cancellation Period Notices by dating them April 23, 2004, instead of Saturday, April 24, 2004 (which Ameriquest improperly excluded as a business day); and (5) by understating the Finance Charge in it final Truth in Lending Disclosure Statement by $6,215.35. R. at 26-27.

Technical Nature of Violations

In the memorandum in support of its motion to dismiss (incorporated by reference into the Bankruptcy Court's decision), Deutsche Bank argued that four of the five violations of the MCCCDA alleged by Larrabee in Count III of the Adversary Complaint were purely technical violations which do not permit an extension of the recission period. R. at 43-44.

In arguing that the omission of the final date to cancel was a technical violation that did not support liability under the MCCCDA, Deutsche Bank cited, inter alia: Palmer v. Champion Mortgage, 465 F.3d 24 (1st Cir.2006) (recitation of a date-certain deadline which had already

12

passed was not misleading where the notice also clearly and conspicuously indicated that the debtor could rescind within three business days of whichever of three enumerated events occurred last); Meggit v. IndyMac Bank, F.S.B., 547 F.Supp.2d 56 (D.Mass.2008) (applying Palmer, and finding that no reasonably alert consumer would have difficulty determining the recission deadline, even where the final date for cancellation was omitted from the disclosure forms, where the notice also recited that the consumer could rescind within three business days from the date of the transaction); Carye v. long Beach Mort. Co., 470 F.Supp.2d 3 (D.Mass.2007) (sufficiency of Notice of Right to Cancel not affected by absence of both the Final Date to Cancel and the Date of the Transaction). R. at 43-44.

Larrabee attempted to distinguish the cases cited by Deutsche Bank by arguing that the totality of circumstances (including not only the blank date on the form, but also Ameriquest's additional notice of a one-week right of recission as a matter of their own policy) was confusing to the average consumer. R. at 106 ff.; Id. at 266-67. He renews that argument on appeal. Docket # 10 at 32-33.

The Bankruptcy Court did not err. The documents in question unquestionably contained the disclosures which the Courts in Palmer, Meggit and Carye found to be adequate. In short, the Bankruptcy Court determined correctly that the average consumer reading these documents objectively would not find them confusing regarding the right to cancel. As in Palmer, the disclosures clearly and conspicuously listed the three separate starting points for the recission period. See, e.g., R. 82. Larrabee provides no support for the proposition that all potential sources of confusion should be considered in the aggregate, nor does an aggregate viewpoint render the disclosures confusing under the applicable standard. In addition, the disclosure documents in this

13

case do not present any of the infirmities which the Palmer court noted were present in each case it reviewed in which notices of rights of recission were found wanting (namely, that the notice was either given prior to the closing and phrased so that the rescission deadline expired before the loan closed, or stated only a single fixed rescission deadline that had elapsed prior to delivery of the notice, or stated no rescission deadline whatsoever). Palmer, 465 F.3d at 24.

The use of the incorrect form (utilizing that intended for an initial financing, rather than for a refinancing) similarly is a technical violation which does not alter the Palmer analysis, since the disclosures found to be adequate in the case law were given.

Finally, the lending bank, as a matter of policy, gave borrowers a one week period of time to cancel, in addition to the three-day period provided under the law. The bank provided a notice explaining this one week cancellation period. R. at 66. This notice would not confuse the average consumer regarding the one-week period itself, nor would it render confusing the required disclosures regarding the three-day cancellation period. The notice explains, plainly, how the one-week period is calculated and also explains the differing sources of the three-day and one-week cancellation periods. Id. In light of the language and terms of the notice, the allegation that the "4-23-04" date listed on the form next to the borrowers' signatures, as the date of receipt, is false when the actual date was April 24, 2004, is an immaterial technical defect given the language of the disclosure stating clearly that the period runs from the date the borrower signs the documents. Id. ("**we provide you with one-week (which includes the day you sign the loan documents) to cancel the loan with no cost to you.**") (emphasis in original).

<u>Liability of Assignee for Interest Rate Disclosure Error</u>

Larrabee next argues that the Bankruptcy Court erred by accepting Deutsche Bank's

argument that as an assignee, it was not liable for an error in understating the Finance Charge because that error was not apparent on the face of the disclosure itself.

The MCCCDA provides in relevant part that "any civil action against a creditor with respect to a consumer credit transaction secured by real property for a violation of [the MCCCDA] . . . may be maintained against any assignee of such creditor only if – (I) the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement provided in connection with such transaction pursuant to this chapter; and (ii) the assignment to the assignee was voluntary. M.G.L. c. 140D, § 33(d)(1). "A violation is apparent on the face of the disclosure statement if: (I) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or (ii) the disclosure statement does not use the terms or format required to be used by [the MCCCDA]." Id. Deutsche Bank argued in support of its motion to dismiss neither the alleged falsification of dates by the closing agent nor the understatement of the finance charge were apparent on the face of the disclosure it received. R. at 45 (citing May v. Key Financial Services, Inc., 424 Mass. 862, 865-66 (1997)).

Larrabee's first argument is that the effect of the Bankruptcy Court's decision is to discourage due diligence on the part of foreclosing banks that purchase non performing loans. To the extent this argument has merit, the cause is not the Bankruptcy Court's decision, but the plain text of the MCCCDA itself as crafted by the legislature, which clearly requires no such due diligence. His second argument is that even if M.G.L. c. 140D, § 33(d)(1) bars a claim for damages under the MCCCDA, his right of recission necessarily remains under M.G.L. c. 140D, § 33(c), which provides that "[a]ny consumer who has the right to rescind a transaction under

section ten may rescind the transaction as against any assignee of the obligation." M.G.L. c. 140D, § 33 (c). Larrabee's Adversary Complaint, however, would be subject to dismissal to the extent that it sought remedies pursuant to M.G.L. c. 140D, § 10, however, because it was not filed within four years of the date of the transaction, as is required by M.G.L. c. 140D, § 10(f). Accordingly, the Bankruptcy Court dismissed correctly this portion of Larrabee's complaint.

    4.    <u>Violations of M.G.L. c. 93A - Per Se and Failure to Honor Recission</u>

Because the Bankruptcy Court correctly dismissed the Adversary Complaint with respect to violation of the MCCDA, Count IV of the Adversary Complaint (which alleges per se violation of M.G.L. c. 93A on the basis of the violations of the MCCDA articulated in Count III) was also properly dismissed. Larrabee next alleges that it was error for the Bankruptcy Court to dismiss Count V of the Adversary Complaint where Larrabee had made notices of recission to both Ameriquest and Deutsche Bank, to which it did not respond.

Count V of the Adversary Complaint purported to be against Deutsche Bank for its actions in failing to honor Larrabee's valid exercise of his right of recission. R. at 28-29. Count V differs on its face from Count IV, which is based upon Ameriquests's actions in alleged violation of the MCCDA. <u>Id.</u> at 27. Yet in opposition to the Motion to Dismiss the Adversary Complaint, and again at the hearing on that motion, Larrabee denied that Count V had any basis other than the actions of Ameriquest. <u>See</u> R. at 126 ("[Deutsche Bank] misapprehends the allegations in [Larrabee's] complaint the application of G.L. c. 93A to this matter . . . Plaintiff demanded recission according to the law. [Deutsche Bank's] predecessor – Ameriquest denied it. And here we are. If it is shown that [Deutsche Bank] (through their predecessor) did not honor a valid recission, then [Deutsche Bank] is liable to [Larrabee] under G.L. c. 93A"); <u>See</u> <u>also</u> R. at 273

16

("We have not suggested that there is some independent 93A claim against Deutsche Bank in this case, your Honor. We're tying that claim to violation of Consumer Credit Cost Disclosure."). Larrabee appears to have abandoned any claim under M.G.L. c. 93A other than those arising under the MCCCDA, which the Bankruptcy Court properly dismissed, for the reasons noted, supra.

5. Unconscionability

Finally, the Bankruptcy Court correctly dismissed the claim in Count VI of the Adversary Complaint for Unconscionability because Larrabee has failed to allege that any of the terms or provisions of the agreement at issue were unconscionable, but rather alleges instead an unconscionable course of conduct which is ancillary to the terms of the agreement itself.

The doctrine of unconscionability has long been recognized as grounds for avoiding a contract. Miller v. Cotter, 448 Mass. 671, 679 (2007). "Historically, a contract was considered unconscionable if it was 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" Id., (quoting Hume v. United States, 132 U.S. 406, 411 (1889) (quoting Earl of Chesterfield v. Janssen, 28 Eng. Rep. 82, 100 (Ch. 1750))). "Later, a contract was determined unenforceable because unconscionable when 'the sum total of its provisions drives too hard a bargain for a court of conscience to assist.'" Id., (quoting Waters v. Min Ltd., 412 Mass. 64, 66 (1992) (quoting Covich v. Chambers, 8 Mass.App.Ct. 740, 750 n. 13 (1979))) (emphasis added). Unconscionability must be determined on a case by case basis giving particular attention to whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." Id., (quoting Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 292-293

(1980)) (emphasis added).

Larrabee's counsel conceded at the hearing on the motion that his claim for unconscionability was not based upon any terms or provisions of the agreement itself, but rather upon ancillary conduct relating to disclosures, etc. See R. at 265. He renews that argument on appeal, citing to case law concerning "the actual terms of the contract" (See Docket # 10 at 40-41 (citing In re Maxwell, 281 B.R. 101, 128 (Bkrtcy.D.Mass.2002)), but arguing "the facts and circumstances surrounding its origination, processing, and ultimately default and foreclosure." Id. In the absence of an allegation that an actual term of the agreement was unconscionable, the Bankruptcy Court correctly dismissed Count VI of the Adversary Complaint.

III.     CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court REVERSE IN PART and remand for further proceedings on Count I of the Complaint, seeking Declaratory Relief concerning Deutsche Bank's right, title or interest in his mortgage loan obligation, and that the Court otherwise AFFIRM the dismissal of Counts II through VI of the Adversary Complaint.[4]

        /s / Leo T. Sorokin
    UNITED STATES MAGISTRATE JUDGE

---

[4] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).